Appellant Lori Meloche appeals from an order granting the Summit County Children Services Board ("CSB") permanent custody of two of her children, Beau Bickett and Brandon Bickett.[1]
This Court affirms.
 I.
Meloche has given birth to five children. Meloche's first child was removed from her custody and placed with the child's father due to allegations of abuse. Meloche's second child was placed with the Stark County Department of Human Services ("DHS") based on medical neglect, Meloche's transiency, and Meloche's failure to comply with a case plan. Meloche's third child was diagnosed with a failure to thrive, severe diaper rash, and an upper-respiratory infection by the age of one month. Based on these medical conditions, the DHS took custody of Meloche's third child. A case plan was adopted for Meloche's third child, but Meloche failed to make any progress. Within a year, Meloche moved to Florida, leaving her third child behind in the custody of the DHS. A few months later, the DHS obtained permanent custody of Meloche's third child.
On April 4, 1995, while in Florida, Meloche gave birth to Beau. Shortly thereafter, Beau was removed from Meloche's household by a Florida social services agency. Beau was eventually returned to Meloche under the Florida agency's supervision.
In late 1995, Meloche returned to Ohio and the Florida social services agency contacted the CSB to express concerns about the results of a psychological evaluation of Meloche that had been obtained while she resided in Florida. The CSB located Meloche in Stark County and passed the concerns of the Florida agency on to the DHS. Based on this referral, the DHS obtained emergency temporary custody of Beau. However, when a key witness failed to appear at the custody hearing, Beau was returned to Meloche's custody and the DHS was granted protective supervision. Because of the unique situation, a DHS worker was assigned to visit Meloche's home three times a week.
Meloche gave birth to Brandon on June 30, 1996. By December 1996, Meloche and her two children were homeless and were forced to live in shelters, on the streets, and in motels. Upon learning of this situation, the DHS took custody of the children. However, in May 1997, the children were returned to Meloche and Meloche moved to Summit County.
In July 1997, the DHS made a referral to the CSB concerning Meloche and her children. Based on that referral, the CSB investigated Meloche and obtained emergency temporary custody of both children on December 12, 1997, claiming that the children were neglected and dependent. On December 24, 1997, following a hearing, the magistrate ordered that the children be returned to Meloche under the protective supervision of the CSB. The magistrate noted:
 After discussing this matter, the mother stated that she did not wish to have further trial in this matter and she was in agreement with an adjudication of dependency, a dismissal of the allegation of neglect, and the dispositional option of protective supervision.
In late January 1998, pursuant to the protective supervision order, social workers from the CSB visited Meloche's home on three consecutive days. During the first two visits, a social worker noticed that Meloche was not responsive to the children's needs, requiring prompting from the social worker. For instance, on one occasion, the social worker found the children screaming and crying in their cribs while Meloche and her boyfriend sat in another room watching television and ignoring the children. Meloche made no attempt to check on the children until the social worker asked her to do so. Additionally, the social workers noticed that Beau seemed pale and congested, that his body was covered with small bruises, and that Brandon was drinking excessive amounts of water and always seemed hungry. When asked about the bruises on Beau, Meloche explained that her family bruised easily. When asked about the discipline of the children, Meloche stated that she never disciplined the children and that her boyfriend handled the discipline. A social worker suggested that the children be taken to the hospital, but Meloche failed to do so.
On the third visit, the social workers helped Meloche feed and cloth the children and then took Meloche and the children to the hospital. The children were examined at the hospital and the doctors determined that one large bruise on Beau was inconsistent with the explanation given by Meloche that Beau had fallen out of his crib. Based on this information, the CSB contacted the police and the police removed the children from Meloche's custody pursuant to Juv.R. 6(A). Shortly thereafter, the CSB requested permanent custody of the children.
The issue of permanent custody was heard by a magistrate, who granted the CSB permanent custody of the children. Meloche timely objected to the magistrate's decision, but the trial court overruled Meloche's objections and adopted the magistrate's decision. Meloche timely appealed.
 II.
Meloche's first assignment of error states:
 THE RULING OF THE TRIAL COURT GRANTING PERMANENT CUSTODY TO THE SUMMIT COUNTY CHILDREN SERVICES BOARD WAS ERROR AS THE STATE DID NOT MEET THE REQUIREMENTS FOR GRANTING PERMANENT CUSTODY AS SET FORTH BY OHIO REVISED CODE 2151.414[.]
This Court interprets this assignment of error as a challenge to the weight of the evidence supporting the trial court's award of permanent custody. When asked to review the weight of the evidence in relation to a civil proceeding, an appellate court will only reverse a judgment when it "`is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.'" Jacobs v. Benedict (1973), 39 Ohio App.2d 141,144, quoting 3 Ohio Jurisprudence (1953) 2d 817, Appellate Review, Section 819.
In cases not involving an abandoned or orphaned child, a trial court is required to find, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody and (2) that the child cannot or should not be placed with either of the child's parents within a reasonable time. R.C. 2151.414(B).
 The standard of clear and convincing evidence requires more than a mere preponderance of the evidence, but it does not rise to the level of certainty that is required of the beyond a reasonable doubt standard in criminal cases. Rather, it must produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.
(Citations omitted.) In re Rankin (Dec. 23, 1998), Summit App. No. 19118, unreported.
 A.
Regarding the first prong of the permanent custody analysis, whether permanent custody is in the child's best interest, a trial court, shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.414(D).
Regarding the first factor, there was apparently some bonding between the children and Meloche, but the children demonstrated an ability to bond easily with their foster parents. At the end of visitation sessions with Meloche, the children would immediately go to their foster parent even if Meloche remained in the room. As a result, a CSB caseworker testified that the prospect of adoption would not be hindered by the slight bond between the children and Meloche.
There was little or no evidence presented concerning the children's bonds with other persons. The children's father could not be found and Meloche did not appear to have any friends or relatives with whom the children had bonded. Although Meloche had been married before and was living with a man at the time that the children were removed from her custody, there was no testimony that the children had formed any bonds with these men.
In sharp contrast to the lack of evidence of positive interaction between Meloche's children and Meloche's male friends, there was substantial evidence of harmful interaction. Meloche has a long history of involvement in relationships with men who are abusive to her and her children. Meloche's other three children had been removed from her custody partly because of her unhealthy relationships with abusive men. In the instant case, Meloche admitted that she allowed her boyfriend to discipline the children, and there was some evidence that his disciplinary methods were inappropriate.
Insofar as the wishes of the children are concerned, neither child was sufficiently mature to express their desires. However, their guardian ad litem recommended that the children be placed with the CSB.
The custodial history that was set forth above reveals that during their short lives the children have been repeatedly removed from Meloche's custody for various reasons. Even during the intervals when Meloche had custody over the children, the children were often cared for by someone other than Meloche. As such, the children have not had a consistent primary caretaker.
Given that Beau appears to be developmentally delayed, the necessity of a legally secure placement is exacerbated in the instant case. The only options for placement at this time are with Meloche or with the CSB. The children's turbulent custodial history is strong evidence that they cannot achieve a legally secure placement with Meloche, leaving the CSB as the only viable alternative.
All of this evidence could reasonably produce a firm belief or conviction in the mind of a trier of fact that placement with the CSB was in the best interest of the children. As such, it cannot be said that the trial court's best interest determination was in complete violation of substantial justice.
 B.
Regarding the second prong of the permanent custody analysis, if the trial court determines by clear and convincing evidence that one or more of twelve enumerated factors exists, then the trial court shall enter a finding that the child cannot or should not be placed with his or her parents within a reasonable time. R.C. 2151.414(E). In the instant case, the trial court specifically addressed the following four factors:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) * * * [C]hronic emotional illness * * * of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *;
* * *
 (10) The parent has * * * caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code and the court determines that the seriousness, nature, or likelihood of recurrence of the * * * neglect makes the child's placement with the child's parent a threat to the child's safety;
 (11) The parent * * * caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code and a sibling of the child previously has been permanently removed from the home of the child's parents because the parent abused or neglected the sibling.
Id.
Meloche's second assignment of error specifically addresses the first enumerated factor regarding her compliance with the case plan:
 THE TERMINATION OF PARENTAL RIGHTS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE PARENTS HAVE SUBSTANTIALLY COMPLIED WITH THE COMPREHENSIVE REUNIFICATION PLAN.
However, Meloche did not raise this issue in her objections to the magistrate's decision. Instead, Meloche merely argued that she "was attempting to follow the case plan, but was unable to do so due to the limited amount of time that this case plan was in effect." After previously admitting that she was unable to follow the case plan, Meloche cannot now attempt to argue that she had substantially complied with the case plan.
Additionally, there was substantial evidence that Meloche had not complied with the case plan. Every social worker who testified stated that Meloche had failed to utilize the resources that were provided to her to comply with the requirements of the plan, particularly the requirements that she obtain stable and adequate housing and submit to psychological counseling. Meloche even told the guardian ad litem "[t]hat she had no intention of complying with her Case Plan because it was too overwhelming." As such, the evidence herein could reasonably produce a firm belief or conviction in the mind of the trier of fact that Meloche had failed to substantially remedy the conditions that caused the removal of the children. Therefore, it was not a complete violation of substantial justice for the trial court to enter a finding that the children cannot be placed with their parents within a reasonable time pursuant to R.C. 2151.414(E).
 C.
Because the trial court complied with R.C. 2151.414, Meloche's assignments of error are not well taken.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Summit County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
___________________________ DONNA J. CARR
FOR THE COURT
SLABY, J.
CONCURS
BAIRD, P. J.
CONCURS IN JUDGMENT ONLY
[1] The judgment entry that is being appealed from incorrectly refers to Beau and Brandon "Brickett." The children's proper name is "Bickett," as set forth in the caption of all of the other pleadings and entries in the case file.